UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 11-30-GWU

EDIE MARGARET WHITTAMORE,                                               PLAINTIFF,

VS.                            **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                        DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

|   |   |
|---|---|
|   | in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded. |
| 4. | At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established. |
| 5. | If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience. |

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

11-30  Edie Margaret Whittamore

then an award of benefits may, under certain circumstances, be had. E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Edie Margaret Whittamore, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of orthopedic problems in combination with plantar fasciitis and Morton's neuroma of the right and left feet. (Tr. 19).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Whittamore retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was

not entitled to benefits. (Tr. 21-26). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 59, tenth grade education, and work experience could perform any jobs if she were limited to lifting 50 pounds occasionally and 25 pounds frequently, never climbing ladders, ropes, and scaffolds, and occasionally climbing ramps and stairs. (Tr. 65). The VE responded that such a person would be able to perform the plaintiff's past work as a material handler, quality control inspector, and tagger. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there is an error of law.

The plaintiff alleged disability due to chronic pain, arthralgia, bursitis, and fibromyalgia, alleging that these conditions caused pain day and night. (Tr. 197). She had worked at the same employer for 38 years until September, 2007, when she felt unable to continue because the work was "killing her." (Tr. 36). She did take care of her ill mother until she passed away in March, 2008 (Tr. 42-43), but she could not do everything by herself (Tr. 51). She stayed fatigued and in pain, could only do housework for one-half hour at a time, and would take three to four hours to prepare meals, although there were some days that she could not do anything.

11-30  Edie Margaret Whittamore

11-30  Edie Margaret Whittamore

(Tr. 52-53). Her husband did most of the grocery shopping. (Tr. 54). She felt she could lift eight pounds, stand 15 minutes and sit 10 minutes. (Tr. 58-60).

The plaintiff alleges on appeal that the ALJ erroneously found that her fibromyalgia was not a "severe" impairment, and that she erroneously rejected a physical capacity functional assessment by Dr. Gary Shearer, a family physician. Dr. Shearer did not begin treating the plaintiff until August 13, 2009 (Tr. 436), and on October 14, 2009, he completed an assessment limiting Mrs. Whittamore to lifting less than ten pounds, standing and walking only one hour in an eight-hour day, sitting two hours in an eight-hour day (no more than 30 minutes at a time), "never" performing any postural activities, having a limited ability to reach, handle, finger, feel, push, and pull, and restricting her from work around heights, moving machinery, temperature extremes, humidity, and vibration. (Tr. 382-86). His initial office note had indicated a history of arthritis and fibromyalgia, among other complaints, and he noted findings of pain to palpation over the trapezius, the greater trochanteric area, and the bursa, along with weakness on dorsal flexion of both great toes and positive straight leg raising testing. (Tr. 437).

The Commissioner's regulations provide that a treating physician's opinion may be entitled to controlling weight where it is supported by sufficient signs, symptoms, and objective findings and is not inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d). The ALJ rejected Dr. Shearer's opinion because

he did not give objective findings in support, although the physician did cite the specific tender points noted above. (Tr. 25). She found, in fact, that there was no evidence of restriction from fibromyalgia. (Tr. 20). The ALJ correctly noted that this condition is difficult to prove by objective testing and an individual must have 11 out of 18 positive tender points. (Id.). The ALJ stated that the record showed tender points but they were not identified. (Id.).

However, the plaintiff had been referred to a rheumatologist, Dr. Christopher Colglazier, by a previous family physician beginning in August, 2006. (Tr. 239). Dr. Colglazier initially treated her for trochanteric bursitis and provided medication and injections. (E.g., Tr. 230-39). Her family physician, Dr. David Littrell, noted in September, 2006 that the plaintiff was having pain that was not consistent merely with bursitis and thought it was reasonable for her to take two months off from work. (Tr. 256). She complained of increasing pain over the next year and various different medications were tried. (Tr. 252-55). Beginning in January of 2008, Dr. Colglazier noted that Mrs. Whittamore was complaining of diffuse pain over her entire body, low energy level, fatigue, and difficulty sleeping. (Tr. 330). She had stopped work but did not feel any better. In addition to the trochanteric problem, his examination showed 18 out of 18 tender points in a fibromyalgia distribution, and he noted that her muscle and joint pain was all compatible with a finding of

fibromyalgia. (Id.). He continued to find 18 out of 18 positive tender points in subsequent examinations in 2008 and 2009. (Tr. 332, 376, 379).

Dr. Colglazier did not provide specific functional restrictions, instead recommending a functional capacity evaluation. (Tr. 379). He recommended in January, 2009 that she "continue" to work, "if at all possible," which suggests that he might have been unaware that she had already stopped working. He felt that being active was beneficial for fibromyalgia patients. (Tr. 378). He noted that some patients felt it was impossible to work with their symptoms, and they would have to decide for themselves if they should apply for disability. (Id.). The ALJ drew negative inferences from the reference to continued working. The ALJ also was critical of the plaintiff's failure to follow through with recommendations that she perform regular aerobics and go to physical therapy. (Tr. 23). However, as Dr. Colglazier subsequently noted, and as the plaintiff testified, she had hesitated to start water aerobics because of a fear of water but eventually did participate. (Tr. 44, 374, 376). The ALJ also felt that despite the plaintiff's good work history, her activities of daily living including caring for her ill mother, helping care for her grandson and son, and ability to cook and clean detracted from the credibility of her subjective complaints. (Tr. 24).

Instead, the ALJ gave significant weight to the one-time examination of Dr. Martin Fritzhand, who found normal range of motion studies, no joint abnormalities,

and no evidence of nerve root damage. (Tr. 24, 298-300). He did not comment on fibromyalgia tender points. She also gave significant weight to "state agency medical consultants" whose physical residual functional capacity (RFC) assessments were consistent with the medium level work set out in the hypothetical question. (Tr. 25). However, it appears that the initial RFC assessment was completed by a non-medical source (Tr. 303-9), and it was later affirmed by a state agency physician (Tr. 363-69). Additionally, there is some conflict in the conclusions of these two sources, with the non-medical source appearing to conclude that there was no clear evidence of fibromyalgia (Tr. 304) while the medical source, Dr. P. Saranga, did note the presence of 18 out of 18 tender points based on an April, 2008 examination by Dr. Colglazier (Tr. 364). Curiously, however, he felt that this report did not add any new objective findings. (Id.).

Although the evidence does not support the ALJ's finding that fibromyalgia was not a "severe" impairment, the mere diagnosis of this condition does not automatically equate to disability. See, e.g., Vance v. Commissioner of Social Security, 260 Fed. Appx. 801, 2008 WL 162942 (6th Cir. 2008). It is still the plaintiff's burden to show the disabling effects of her impairment.

The opinion of a treating source such as Dr. Shearer is normally entitled to greater weight than a non-examining source such as Dr. Saranga. This is particularly true where the non-examining source has not reviewed all of the

evidence and commented on the reasons for the difference of opinion.  <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234, 245 n. 4 (6th Cir. 2007).  However, even when a treating source opinion is not entitled to complete deference, it still must be weighed under several factors set out in § 404.1527(d) including the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source.

While the ALJ reasonably noted that Dr. Shearer had only treated the plaintiff since August of 2009, she erroneously asserted that his record did not contain any objective findings in support of his opinion.  (Tr. 25).  Moreover, the findings were consistent with the repeated references by the treating rheumatologist, Dr. Colglazier, that the plaintiff had 18 out of 18 tender points in a fibromyalgia distribution, a factor which supports the credibility of Dr. Shearer's limitations.  <u>See Brooks v. Social Security Administration</u>, 430 Fed. Appx. 468, 2011 WL 2745822.  Accordingly, Dr. Shearer's opinion was not properly evaluated under § 404.1527(d).

In addition, the Sixth Circuit has been critical of the defendant's citation of minor life activities such as housework to support a holding that a claimant can perform typical work activities.  <u>Rogers</u>, 486 F.3d at 248-49.  The ALJ made no mention of the short length of time the plaintiff could engage in the activities, or that she reported that she needed help taking care of her ill mother.  Credibility

11

11-30  Edie Margaret Whittamore

determinations must be "reasonable and supported by substantial evidence." <u>Id.</u> at 249.

While the evidence does not support the plaintiff's request for an award of benefits, further proceedings are required if the opinion of Dr. Shearer is to be rejected or partially discounted.

The decision will be remanded for further consideration.

This the 22nd day of December, 2011.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**